1

2

3

4

5                               UNITED STATES DISTRICT COURT

6                             NORTHERN DISTRICT OF CALIFORNIA

7

8    DARRELL J. MITCHELL                          No. C-13-3765 EMC (pr)
     a/k/a DARNELL MITCHELL
9    (CDCR # K-48636),

10              Plaintiff,                         **ORDER OF DISMISSAL WITH LEAVE
                                                  TO AMEND**
11        v.

12   CALIFORNIA DEPARTMENT OF
     CORRECTIONS; *et al.*,
13
                Defendants.
14   _____/

15

16                           **I.    INTRODUCTION**

17        Darrell J. Mitchell a/k/a Darnell Mitchell, an inmate currently at Mule Creek State Prison,

18   filed this *pro se* civil rights action under 42 U.S.C. § 1983.  His complaint is now before the Court

19   for review under 28 U.S.C. § 1915A.

20                           **II.    BACKGROUND**

21        The complaint concerns the response to Mr. Mitchell's ear problems while he was at San

22   Quentin State Prison.  The complaint alleges the following:

23        Mitchell arrived at San Quentin State Prison on November 6, 2008, at which time he noted

24   discomfort in his right ear.

25        On November 7, 2008, Dr. Alvarez prescribed ear drops.

26        On November 22, 2008, two days after he began experiencing severe pain and hearing loss,

27   Mr. Mitchell saw R.N. Susuer, who examined him and scheduled an appointment.

28        On November 25, 2008, Dr. Devereaux examined him and prescribed medications.

     On December 6, 2008, Dr. David C. saw Mr. Mitchell and noted that the ear was no better.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    On December 8, 2008, Dr. Devereaux ordered another medication for him.

2    On December 16, 2008, Dr. W. Hall saw Mr. Mitchell and referred him to U.C.S.F. as soon

3    as practical.

4    On December 17 and 28, 2008, Mr. Mitchell filled out health care request forms for ear pain

5    and because the medication was making him sick.  On December 30, he was seen by nurse Lesher,

6    who stopped the medication and rescheduled an ear treatment appointment for January 7, 2009.

7    Dr. Devereaux said that Mr. Mitchell needed surgery on the right ear.  Mr. Mitchell was

8    transferred back to Lake County Jail before that occurred.

9    At Lake County Jail, Mr. Mitchell made officials aware of his ear problem and the need for

10   treatment.  "However, jail officials would not treat said plaintiff ear because the California

11   Department of Corrections San Quentin State Prison Health Care Service inform the officials that

12   they would treat said plaintiff when he return to San Quentin State Prison."  Docket # 1 at 7 (errors

13   in source).  Mr. Mitchell remained at Lake County Jail for almost nine months, i.e., from January 22,

14   2009 until October 15, 2009, without treatment for his right ear.  "Plaintiff was in the care of

15   California Department of Corrections at all times while he was detained at Lake County Jail."  *Id.*

16   On October 15, 2009, Mr. Mitchell was returned to San Quentin, at which point his ear was

17   worse and was infected.

18   On March 20, 2010, Dr. Hall told Mr. Mitchell that he "should have had this ear problem

19   taken care of a long time ago.  Said plaintiff was told that nothing could be done (surgery) on their

20   part (proper treatment) but that the problem lies within the CDCR administration for the proper

21   clearance, that I may-be admitted and received by U.C.S.F. medical center for proper treatment."  *Id.*

22   at 8.

23   On April 20, 2010, Mr. Mitchell had an ear, nose and throat consultation at U.C.S.F. for

24   otorrhea (i.e., discharge from the ear) and ear infections.  Dr. Lawrence Lustig noted a lot of

25   purulent drainage within the ear canal.  The ear canal was then cleaned.  Dr. Lustig prescribed

26   medication, irrigation treatment, and a follow-up in three weeks.  *Id.* at 8-9.  Mr. Mitchell was

27   returned to San Quentin.

28   On April 22, 2010, Mr. Mitchell had a follow-up visit with Dr. Alison Pachynski, and tried to

explain to her the detailed analysis of his condition at U.C.S.F. and that he was told he needed

hearing aids. She "dismiss[ed] this information as hearsay." *Id.* at 10.

On June 1, 2010, Mr. Mitchell had another follow-up visit with Dr. Pachynski.  He was told

not to use the sodium borate acid wash that had been recommended for his ear problem.  Dr.

Pachynski determined that there might not be a need for Mr. Mitchell to return to U.C.S.F.

In a July 1, 2010 visit with Dr. Pachynski, she noted that Mr. Mitchell was once again having

drainage from his ear.  Mr. Mitchell's scheduled appointment for a hearing aid fitting was cancelled

due to an active infection and inflammation.

On July 20, 2010, Mr. Mitchell returned to U.C.S.F. for a follow-up visit.  Dr. Lustig

recommended a medication and a follow-up in three weeks.  On August 10, 2010, Dr. Lustig saw

him again and noted that there was still periodic drainage and some granular areas, although the

drainage situation had improved.

On August 24, 2010, Mr. Mitchell had a chronic care follow-up visit with Margaret Hanna,

APN.  Mr. Mitchell expressed concern that the audiology department said he could not have a

hearing aid until he was released by U.C.S.F.  Also, he had been off his medication for weeks

because his medication was taken from his possession by custody staff.

On September 17, 2010, Mr. Mitchell had a chronic care follow up with Dr. Pachynski.  He

expressed concern that he was having drainage from his ear and sometimes felt a tickling sensation

inside his ear, although he was using his ear medication daily as directed.

On November 2, 2010, Mr. Mitchell had a visit with Ms. Hanna, who checked his ear.  She

noted a small amount of wax.  Mr. Mitchell said that he had seen Dr. Hall the day before for his

mastoiditis and Dr. Hall reported a slight irritation of the canal.

After his last scheduled appointment at U.C.S.F. "was delayed or fell through the cracks,"

Mr. Mitchell had a visit with Dr. Jenny Espinoza-Marcus on December 13, 2010. *Id.* at 12.  Mr.

Mitchell told the doctor that his ear issue had not been addressed, that he was having some drainage

from his ear, and that his hearing aid fitting had not occurred.  Dr. Espinoza-Marcus said that, due to

a power outage, she could not use an otoscope to look in his ear that day, but said she would make

sure he had a follow-up with Dr. Hall.

**United States District Court**
For the Northern District of California

1    On January 11, 2011, Mr. Mitchell saw Ms. Hanna and reminded her that he was still having

2    ear discharge and had not had his follow-up appointment with U.C.S.F. or ENT.[1]  She scheduled an

3    appointment for a February 1, 2011 follow-up with ENT.

4    On February 7, 2011, Mr. Mitchell again saw Ms. Hanna.  He was scheduled for an

5    appointment with audiology on March 7, 2011.

6    Mr. Mitchell contends that the defendants' responses to his ear problems violated his Eighth

7    Amendment rights.

8    ### III.   DISCUSSION

9    A federal court must engage in a preliminary screening of any case in which a prisoner seeks

10   redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

11   § 1915A(a).  In its review the Court must identify any cognizable claims, and dismiss any claims

12   which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek

13   monetary relief from a defendant who is immune from such relief.  *See id.* at § 1915A(b).  *Pro*

14   *se* pleadings must be liberally construed.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

15   (9th Cir. 1990).

16   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right

17   secured by the Constitution or laws of the United States was violated and (2) that the violation was

18   committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48

19   (1988).

20   Deliberate indifference to a prisoner's serious medical needs violates the Eighth

21   Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Toguchi v. Chung*, 391 F.3d 1051,

22   1057 (9th Cir. 2004).  A defendant violates the Eighth Amendment only when two requirements are

23   met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is,

24   subjectively, deliberately indifferent to the inmate's health or safety.  *See Farmer v. Brennan*, 511

25   U.S. 825, 834 (1994).

26   A "serious" medical need exists if the failure to treat a prisoner's condition could result in

27

28   _____

[1] It is unclear from the complaint whether "ENT" is a department/person in the prison system
or is the ear, nose and throat department at U.C.S.F.

4

further significant injury or the "unnecessary and wanton infliction of pain." *Id.*  The complaint adequately alleges a serious medical need, i.e., chronic ear problems.

The problem with Mr. Mitchell's complaint concerns the mental state required for an Eighth Amendment claim.  A defendant is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Id.* at 837.  The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  *Id.*  If [the defendant] should have been aware of the risk, but was not, then [he] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).  "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi*, 391 F.3d at 1058 (citation omitted).

The complaint fails to allege facts sufficient to state a claim that any defendant acted with deliberate indifference to Mr. Mitchell's serious medical needs.  The complaint provides a chronology of the care of Mr. Mitchell's ear problems that shows numerous examinations by medical care providers, several different medications prescribed by medical care providers, and referral to an outside specialist.  The chronology in the complaint does not show or support an inference of deliberate indifference by any particular defendant based on the care that was provided. Deliberate indifference by a defendant cannot be inferred merely from the fact that Mr. Mitchell had persistent and recurrent ear problems.  In his amended complaint, he must allege facts showing that what each defendant did or failed to do amounted to deliberate indifference to his ear problems.

A delay in medical care may reflect deliberate indifference.  *See Snow v. McDaniel*, 681 F.3d 978, 990 (9th Cir. 2012) (jury could infer deliberate indifference where officials ignored repeated outside expert advice that defendant urgently needed hip surgery or where there was evidence that defendant was motivated by animus in delaying treatment).  Mr. Mitchell has not linked any of the defendants to any delay in his care, as he has not alleged that any of the defendants caused that delay. With regard to the delay in obtaining a hearing aid, there is the additional problem that Mr.

United States District Court
For the Northern District of California

1 Mitchell has not alleged that it was proper to fit him for a hearing aid when he had chronic ear

2 infections/ inflammation and his complaint suggests that was the reason for at least part of the delay

3 in getting the hearing aid.  *See* Docket # 1 at 11 (someone in audiology department said he could not

4 have a hearing aid until he was cleared by U.C.S.F. or Dr. Hall).

5      Mr. Mitchell included as defendants the warden and the chief medical officer at San Quentin,

6 but does not allege any direct involvement in his care by either defendant.  The mere fact that these

7 persons were in charge of the prison or prison system does not make them liable because there is no

8 respondeat superior liability under § 1983, i.e. no liability under the theory that one is liable simply

9 because he employs a person who has violated plaintiff's rights.  *See Monell v. Dep't of Social*

10 *Servs.,* 436 U.S. 658, 691 (1978)*; Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).   A supervisor

11 may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional

12 deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

13 constitutional violation.  *See Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).   The

14 allegations of the complaint show no such involvement or causal connection for the wardens or the

15 Director of the CDCR.

16      One troubling allegation in the complaint is that Mr. Mitchell received no medical care for

17 the nine months he was at Lake County Jail because his jailers were told by "California Department

18 of Corrections San Quentin State Prison Health Care Service" not to treat him because he would be

19 treated when he returned to prison.  *See* Docket # 1 at 7.  Mr. Mitchell did not identify the person

20 who gave these directions to the jail, and therefore doesn't state a claim against any defendant based

21 on them.  Similarly, the allegation that Dr. Hall indicated to him on March 10, 2010 that the source

22 of the delay in care was at the "CDCR administration" which apparently was delaying "proper

23 clearance" does not identify any defendant that was the cause of the delay.[2]

24

25      [2] It would not aid Mr. Mitchell to add the "CDCR administration" or the "prison health service"
as a defendant for purposes of obtaining damages because those defendants are state agencies and would
26 be entitled to immunity under the Eleventh Amendment to the U.S. Constitution.  The Eleventh
Amendment bars from the federal courts suits against a state by its own citizens, citizens of another
27 state, or citizens or subjects of any foreign state. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-
38 (1985).  Eleventh Amendment immunity also extends to suits against a state agency.  *See Brown v.*
28 *Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and
California Board of Prison Terms entitled to Eleventh Amendment immunity); *see also Allison v. Cal.*

Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .   Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).   A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.   "Specific facts are not necessary; the statement need only . . . give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations and internal quotation marks omitted).   Leave to amend is granted so that Mr. Mitchell may file an amended complaint that proffers enough facts to state a claim to relief for an Eighth Amendment violation that is plausible on its face.

In his amended complaint, Mr. Mitchell must be careful to allege facts showing the basis for liability for each defendant.   He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each involved defendant did or failed to do that caused a violation of his rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

Mr. Mitchell's motion for an order directing service of process by U.S. Marshal is DENIED as unnecessary.   (Docket # 6.)   If the amended complaint states a claim upon which relief may be granted and the Court orders service of process, the Court will order the Marshal to do it because Mr. Mitchell is proceeding in forma pauperis.   See 28 U.S.C. § 1915(d).

## IV.   **CONCLUSION**

The amended complaint fails to state a § 1983 claim upon which relief may be granted. Leave to amend is granted so that Mr. Mitchell may attempt to allege a violation of his constitutional rights.   The amended complaint must be filed no later than **March 28, 2014**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page.   Mr. Mitchell is cautioned that his amended complaint must be a complete statement of

*Adult Authority*, 419 F.2d 822, 823 (9th Cir. 1969) (California Adult Authority and San Quentin State Prison not persons within meaning of Civil Rights Act).

United States District Court
For the Northern District of California

his claims.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.")  Failure to file the amended complaint by the deadline will result in the dismissal of the action.

IT IS SO ORDERED.

Dated:  February 24, 2014

EDWARD M. CHEN
United States District Judge