UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL MITCHELL,<br><br>            Plaintiff,<br><br>     v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br><br>            Defendants. | Case No. 13-cv-03765-JD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 30, 34, 35, 38, 55 |

Darrell Mitchell, a state prisoner proceeding pro se, has brought a civil rights action under 42 U.S.C. § 1983. Mitchell alleges that defendants were deliberately indifferent to his serious medical needs. Defendants Dr. Clark and Dr. Pachynski have moved to dismiss for failure to state a claim, and defendant Dr. Hall has moved for summary judgment. These motions were filed on February 11 and February 12, 2015, and Mitchell was allowed several extensions to oppose. Mitchell has now filed oppositions and he has filed an appeal to the Ninth Circuit regarding the Court's denial of his motion for appointment of counsel and for discovery.[1] The motion to dismiss and motion for summary judgment are granted.

---

[1] Mitchell's motions for discovery were denied because he failed to describe what discovery he required. Mitchell has now submitted a document from defendant Hall that sets forth answers to interrogatories and requests for admissions. Docket No. 51. Mitchell does not specifically describe what requests should be compelled and why Hall's answers were unsatisfactory. To the extent Mitchell seeks to compel all the discovery that he requested and was denied, simply attaching the exhibit with no further information or arguments is insufficient. Moreover, Mitchell's opposition to the motion for summary judgment contains more than 370 pages of medical records.

## I. MOTION TO DISMISS

### A. Background

This action proceeds on the first amended complaint. Docket No. 9. The following allegations are stated in the complaint:

Plaintiff states that defendant Clark is the Chief Medical Officer at San Quentin State Prison ("SQSP") and defendant Pachynski is a physician and surgeon at SQSP. Plaintiff arrived at SQSP on November 6, 2008, at which time he noted discomfort in his right ear. On November 7, 2008, he was prescribed ear drops. On November 22, 2008, two days after he began experiencing severe pain and hearing loss, plaintiff saw a nurse, who examined him and scheduled an appointment. On November 25, 2008, plaintiff was examined and prescribed medications by a doctor.

On December 6, 2008, plaintiff was seen by a doctor and provided additional medication. On December 16, 2008, plaintiff was seen by a doctor and referred to University of California San Francisco (UCSF) as soon as practicable. On December 17 and 28, 2008, plaintiff filled out health care request forms for ear pain and because the medication was making him sick. On December 30, he was seen by a nurse, who stopped the medication and rescheduled an ear treatment appointment for January 7, 2009. A doctor who then examined Mitchell told him that he needed surgery on his right ear. Plaintiff was transferred to Lake County Jail before a referral for surgery occurred.

At Lake County Jail, plaintiff made officials aware of his ear problem and the need for treatment. Plaintiff alleges that defendant Pachynski contacted a Lake County Jail physician and stated that plaintiff would be treated when he returned to SQSP. Plaintiff does not identify the Lake County Jail physician or how he became aware of this information. Plaintiff remained at Lake County Jail for almost nine months, i.e., from January 22, 2009 until October 15, 2009, allegedly without treatment for his ear.[2]

On October 15, 2009, plaintiff was returned to SQSP, at which point his ear was worse and was infected. On April 20, 2010, plaintiff had an ear, nose and throat consultation at UCSF for

---

[2] No officials at Lake County Jail have been named as defendants in this action.

1  otorrhea (i.e., discharge from the ear) and the infection. A doctor noted purulent drainage within
2  the ear canal, which was then cleaned. Plaintiff was prescribed medication and irrigation
3  treatment and scheduled for a follow-up appointment in three weeks.

4      On April 22, 2010, plaintiff had a follow-up visit with defendant Pachynski. He states he
5  tried to explain to her the details from his visit to UCSF and that he needed hearing aids, but "she
6  dismissed this information as hearsay." Am. Comp. at 7. Plaintiff was seen by Pachynski again
7  on June 1, 2010. She told him not to use the sodium borate acid wash for his ear. She also told
8  him that he may not need to return to UCSF.

9      In a July 1, 2010 visit with Pachynski, plaintiff was found once again to have drainage
10  from his ear. Plaintiff's scheduled appointment for a hearing-aid fitting was cancelled due to an
11  active infection and inflammation.

12      On July 20, 2010, plaintiff returned to UCSF for a follow-up visit. The doctor
13  recommended medication and a follow-up in three weeks. On August 10, 2010, plaintiff was seen
14  again at UCSF and found to have periodic drainage and some granular areas, although the
15  drainage situation had improved.

16      On September 17, 2010, plaintiff had a chronic care follow up with Pachynski and he
17  expressed concern that he was having drainage from his ear and sometimes felt a tickling
18  sensation inside his ear even though he was using his ear medication daily as directed.

19      On January 11, 2011, plaintiff met with medical staff and noted that he was still having ear
20  discharge and had not had his follow-up appointment with UCSF. He was then scheduled for
21  follow-up appointments.

**B.   Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, *Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). All allegations of material fact are taken as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, conclusory statements not supported by factual allegations need not be accepted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (courts are not bound to accept as true "a legal conclusion couched as a factual allegation"). "A plaintiff's obligation to provide the

3

1  'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

2  formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.*

3  *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papsan v. Allain*, 478 U.S. 265, 286 (1986)

4  (alteration in original)).   Rather, the allegations in the complaint "must be enough to raise a right

5  to relief above the speculative level." *Id*.

6       A motion to dismiss should be granted if the complaint does not proffer enough facts to

7  state a claim for relief that is plausible on its face. *See id*. at 558-59, 574.  "[W]here the well-

8  pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

9  complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556

10  U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

11       Deliberate indifference to serious medical needs violates the Eighth Amendment's

12  proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976);

13  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX*

14  *Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of

15  "deliberate indifference" involves an examination of two elements: the seriousness of the

16  prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

17       A serious medical need exists if the failure to treat a prisoner's condition could result in

18  further significant injury or the "unnecessary and wanton infliction of pain." *Id.*  The existence of

19  an injury that a reasonable doctor or patient would find important and worthy of comment or

20  treatment, the presence of a medical condition that significantly affects an individual's daily

21  activities, or the existence of chronic and substantial pain are examples of indications that a

22  prisoner has a serious need for medical treatment. *Id.* at 1059-60.

23       A prison official is deliberately indifferent if he or she knows that a prisoner faces a

24  substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate

25  it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of

26  facts from which the inference could be drawn that a substantial risk of serious harm exists," but

27  also "must also draw the inference." *Id.*  If a prison official should have been aware of the risk,

28  but did not actually know, the official has not violated the Eighth Amendment, no matter how

severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In addition "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference. . . . [Prisoner] would have no claim for deliberate medical indifference unless the denial was harmful." *Shapley v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

**C.  Discussion**

There are no allegations that defendant Clark ever treated Mitchell. The only allegations Mitchell makes are that Clark, as the supervisor of the other doctors, is liable for her employees' actions and her policies created an unreasonable risk of harm. But, Mitchell does not identify or describe these policies in sufficient detail.

"In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 682 (finding under *Twombly*, and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a *Bivens* action failed to plead sufficient facts "plausibly showing" that top federal officials "purposefully adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and nondiscriminatory explanations).

A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim - and, more specifically, on the state of mind required by the particular claim - not on a generally applicable concept of supervisory liability. *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012).

Because Mitchell has failed to link Clark to any of his treatment or any constitutional deprivation, she is dismissed from this action. When Mitchell's original complaint was dismissed with leave to amend he was specifically told that he must provide allegations of Clark's connection to the constitutional deprivation because there is no respondeat superior liability. Docket No. 8 at 6. Mitchell failed to cure these deficiencies in the amended complaint or address them in his opposition, and it would be futile to allow for further amendment. Clark is dismissed with prejudice.

Mitchell alleges that defendant Pachynski treated him on four separate occasions but failed in her obligation to provide him with constitutionally adequate care. Mitchell's specific allegations against Pachynski are difficult to discern. Pachynski allegedly dismissed plaintiff's need for a hearing-aid, though the hearing aid fitting was cancelled due to an active ear infection and inflammation. On a separate occasion Pachynski told Mitchell not to use the sodium borate acid wash for his ear. Mitchell provides no more specific allegations concerning how Pachynski was deliberately indifferent to his serious medical needs when she treated him. To the extent there was a difference of opinion, this fails to state a claim. *Franklin*, 662 F.2d at 1344.

Mitchell also states in the amended complaint, "Dr. Pachynski had been in contact with the Lake County Jail physician who check[ed] up on [plaintiff]. Dr. Pachynski inform[ed] the doctor that the (CDCR) would treat [plaintiff] when he returned to San Quentin." Am. Comp. at 12. Pachynski argued in the motion to dismiss that plaintiff failed to present sufficient facts regarding this allegation to state a claim for deliberate indifference to serious medical needs. Mitchell did not address defendant's argument in his opposition.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Mitchell's bare allegations are insufficient to state a claim under *Iqbal*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S., at 678. Mitchell has not provided any information regarding the medical care he

sought at Lake County Jail, including what they provided or denied him, the name of the doctor or doctors, and how he knows Pachynski was responsible.[3]

The amended complaint will be dismissed with leave to amend solely concerning the claims against Pachynski.[4] Mitchell may not add any other defendants or claims. He must provide additional information concerning how Pachynski was deliberately indifferent to his serious medical needs in treating his ear problems. With respect to the allegation that Pachynski contacted medical staff at Lake County Jail and instructed a doctor or doctors not to treat Mitchell, he must plead additional factual content for this claim describing how he was aware of this information and what medical treatment was denied as a result of Pachynski's instruction that caused a constitutional violation. The second amended complaint must be filed within **twenty-eight (28) days** of the date of this order. Failure to file a second amended complaint will result in the dismissal of Pachynski.[5]

## II. MOTION FOR SUMMARY JUDGMENT

Defendant Dr. Hall moved for summary judgment on the grounds that he provided medical care consistent with standard care applicable to medical professionals and was not deliberately indifferent to Mitchell's serious medical needs.

### A. Factual Background

The following facts are undisputed after reviewing the record, and Mitchell has not disputed them in his opposition:

Hall was an independent contractor and was not employed by SQSP nor was he an employee of CDCR. Motion for Summary Judgment ("MSJ") at 2. Hall first saw Mitchell on December 16, 2008, for complaints about Mitchell's ear. *Id*. Hall assessed Mitchell with right chronic otitis media and a chronically infected mastoid. *Id*. Hall referred Mitchell to be seen by

---

[3] Mitchell stated he was transferred to Lake County Jail from January 22, 2009, to October 15, 2009. The first time Pachynski treated him was on April 22, 2010.
[4] The Court will not address the qualified immunity argument because there was no constitutional violation with respect to Clark and there are insufficient factual allegations against Pachynski. Defendant may renew this argument if Mitchell files a second amended complaint.
[5] To the extent Mitchell argues he requires discovery to oppose the motion to dismiss, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is limited to the contents of the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

specialists at UCSF to be evaluated for possible right ear surgery. *Id*. As an independent contractor, once Hall refers a patient to services outside of the prison, the scheduling department of the prison processes the referral request and Hall has no more involvement. *Id*.

Mitchell was transferred to Lake County Jail from January 22, 2009, to October 15, 2009, when he was transferred back to SQSP. *Id*. Hall was not informed of Mitchell's transfer nor was he contacted regarding Mitchell during this time. *Id*. Mitchell did not go to UCSF for the referral due to his transfer. *Id*.

Hall next saw Mitchell on December 8, 2009, where he diagnosed him with a chronic mastoiditis of the right ear and felt he needed to see an audiologist and should be referred to UCSF. *Id*. Mitchell was seen by another doctor on January 5, 2010 where he was prescribed medication and instructed to avoid putting foreign objects in his ear. *Id*. at 3. For four days in January 2010, Mitchell refused to take the prescribed Amoxicillin and Clarithromycin. *Id*.

Dr. Hall treated Mitchell on February 16, 2010 where he prescribed a course of antibiotics and noted that Mitchell was still awaiting an appointment at UCSF. *Id*. Hall also treated Mitchell on March 2, 2010, and March 30, 2010. *Id*.

Mitchell was seen at UCSF on April 20, 2010, where it was noted that the temporomandibular joint was intact and normal, the right ear showed purulent drainage and there was granulation posterior medially on the canal, as well as on the posterior and inferior tympanic membrane. *Id*. at 3-4. There was no perforation on the drum itself, and Mitchell appeared to have granular myringitis which was cauterized. *Id*. at 4.

Mitchell was seen by Hall on April 27, 2010, where he was prescribed ear drops and received a referral for an audiologist to receive a hearing aid and a follow up referral to UCSF. *Id*. Hall saw Mitchell again on May 18, 2010, and June 1, 2010, in which the hearing aid was ordered and more ear drops were provided. *Id*. It was also noted that Mitchell's condition was improving. *Id*.

Hall saw Mitchell on July 13, and July 19, 2010. *Id*. A referral to UCSF for possible ear surgery was provided, an audiology report was prepared, and it was noted that the hearing aids were not appropriate until his ear infection was resolved. *Id*.

8

Mitchell returned to UCSF on July 20, 2010, where it was found that the granular changes were much reduced and the granulation tissue appeared to be limited to the posterior inferior quadrant of the drum and was cauterized. *Id*. Mitchell returned to UCSF on August 10, 2010, and August 31, 2010, where the granulation issues were nearly entirely resolved. *Id*. at 5.

Hall treated Mitchell on October 26, 2010 due to drainage in the ear. *Id*. It was noted that UCSF felt surgery was not appropriate, but that cauterization should continue to be utilized. *Id*. Mitchell returned to UCSF on November 9, 2010, where it was observed that the granular changes were almost entirely confined to a small spot, which was again cauterized. *Id*. He was provided ear drops and given medical clearance for hearing aids. *Id*.

Hall saw Mitchell on February 1, 2011, and treated him for ear drainage. *Id*. Hall saw Mitchell on May 24, 2011, where no ear drainage was observed. *Id*. at 6. Mitchell was treated by other medical staff on three occasions in August and September 2011. *Id*. Hall treated Mitchell on November 22, 2011, and irrigated and cleaned the right ear. *Id*. Mitchell was treated at UCSF on January 17, 2012. *Id*. at 6-7. Hall treated Mitchell on February 21, 2012, and while he complained of burning and pressure, his condition was noted to be much better. *Id*. at 7. On October 21, 2014, Mitchell, now being held at Mule Creek State Prison, underwent a surgical procedure designed to repair eardrum perforation at San Joaquin General Hospital. *Id*.

**B. Standard of Review**

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id*.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

1  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial
2  burden of identifying those portions of the record that demonstrate the absence of a genuine issue
3  of material fact.  *Id*.  The burden then shifts to the nonmoving party to "go beyond the pleadings
4  and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on
5  file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id*. at 324
6  (citing Fed. R. Civ. P. 56(e) (amended 2010)).

   For purposes of summary judgment, the Court must view the evidence in the light most
favorable to the nonmoving party; if the evidence produced by the moving party conflicts with
evidence produced by the nonmoving party, the court must assume the truth of the evidence
submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).
The Court's function on a summary judgment motion is not to make credibility determinations or
weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc., v.
Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**C.  Discussion**

Mitchell argues that Hall was responsible for delaying treatment, ear surgery, and a hearing aid, and he ignored medical advice from UCSF.  Summary judgment is granted to Hall because there is no genuine dispute as to any material fact.  The undisputed facts demonstrate that Mitchell received a great deal of medical care, including frequent appointments with prison medical staff and numerous referrals for treatment at UCSF.  Hall provided medical care multiple times and repeatedly referred Mitchell to UCSF and placed referrals for hearing aids.  Mitchell argues that Hall denied him surgery, yet Hall repeatedly referred him to UCSF for a surgery consultation and UCSF never recommended surgery.  The medical reports from UCSF indicate that Mitchell was improving with the treatment.  MSJ, Ex. D at 31-53.  On Mitchell's November 9, 2010, appointment at UCSF, he was scheduled for a follow-up appointment where it was expected that the situation would be entirely resolved.  *Id*. at 46.  None of these actions demonstrate deliberate indifference to Mitchell's serious medical needs.

Hall also repeatedly referred Mitchell for an audiologist appointment to receive hearing aids.  It was Mitchell's ear infection that delayed the hearing aid as noted by the audiologist and

UCSF. Hall was not responsible for the delay in Mitchell receiving a hearing aid. Hall has also included an expert declaration from a board certified doctor who specializes in ear, nose, and throat treatment and who is a professor at Stanford University School of Medicine. MSJ, Ex. B. The expert concluded that Hall provided appropriate care and treatment to Mitchell at all times and Hall's care and treatment did not cause Mitchell to suffer any new or increased ear symptoms. *Id.*

A review of the motion for summary judgment, Mitchell's opposition and complaint indicate that Mitchell received a great deal of medical treatment at the prison and at UCSF. That Mitchell disagrees with various aspects of his treatment does not entitle him to relief. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin*, 662 F.2d at 1344. To the extent that there were delays that were not attributed to Mitchell's condition, "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference. . . . [Prisoner] would have had no claim for deliberate medical indifference unless the denial was harmful." *Shapley*, 766 F.2d at 407. Mitchell has not shown that he was harmed by any of the delays. For all these reasons, Mitchell has failed to meet the high standard of deliberate indifference, and summary judgment is granted to Hall.[6]

### III.    CONCLUSION

1. The motion to dismiss (Docket No. 34) is **GRANTED** and defendant Clark is dismissed with prejudice. Plaintiff may file a second amended complaint solely with respect to defendant Pachynski as discussed above, within **twenty-eight (28) days** of the date this order is filed. Failure to file the second amended complaint within the designated time will result in the dismissal of this defendant.

2. The motion for summary judgment (Docket Nos. 35, 38, 55) is **GRANTED**. Defendant Hall is dismissed from this action with prejudice.

---

[6] Because the Court has not found a constitutional violation, the Court will not address Hall's argument that he was not a state actor for purposes of 42 U.S.C. § 1983.

3. Plaintiff's motion to expand the record (Docket No. 30) is **DENIED**, however the Court has considered the medical records plaintiff submitted with his oppositions.

**IT IS SO ORDERED.**

Dated: September 29, 2015

_____
JAMES DONATO
United States District Judge

1   UNITED STATES DISTRICT COURT

2   NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL MITCHELL,<br>             Plaintiff,<br>    v.<br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br>             Defendants. | Case No. 13-cv-03765-JD<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 29, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Darrell  Mitchell ID: CDCR# K-48636  
Mule Creek State Prison  B-9-220U  
P.O. Box 409040  
Ione, CA 95640

Dated: September 29, 2015

Susan Y. Soong  
Clerk, United States District Court

By: /s/ Lisa R. Clark  
LISA R. CLARK, Deputy Clerk to the  
Honorable JAMES DONATO